UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| TONI EHLERS, Individually and For Others Similarly Situated | Case No. _____ |
| v. | Jury Trial Demanded |
| VNA CARE NETWORK, INC. | FLSA Collective Action<br>Rule 23 Class Action |

**ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Toni Ehlers (Ehlers) brings this class and collective action to recover unpaid wages and damages from VNA Care Network, Inc. (VNA).

2. Ehlers works for VNA as a Licensed Practical Nurse (LPN) in Massachusetts.

3. Like the other Patient Care Employees (defined below), Ehlers regularly worked more than 40 hours a workweek.

4. But VNA does not pay them for all the hours they work.

5. Instead, VNA deducts 30 minutes a workday from these employees' work time for so-called "meal breaks" (VNA's "meal auto-deduction policy").

6. Ehlers and the other Patient Care Employees are thus not paid for that time.

7. But VNA fails to provide or make available *bona fide* meal breaks to Ehlers and the Patient Care Employees.

8. Instead, VNA requires Ehlers and the other Patient Care Employees to remain on-duty throughout their shifts and continuously subjects them to interruptions, including during their unpaid "meal breaks."

9. VNA deducts 30 minutes each workday even if Ehlers and the other Patient Care Employees are unable to take a *bona fide* meal break.

10. VNA's meal auto-deduction policy violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA) and the Massachusetts Wage and Hour Law (MWHL) by depriving Ehlers and the Employees of "time and a half" overtime compensation for all hours worked in excess of 40 each workweek.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. The Court also has supplemental jurisdiction over the state-law claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

13. This Court has general personal jurisdiction over VNA because VNA is a domestic corporation that maintains its headquarters in Worcester, Massachusetts.

14. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

15. Specifically, VNA employed Ehlers and subjected her to its overtime pre-approval requirement and meal auto-deduction policy in Essex County, Massachusetts, which is in this District and Division.

## PARTIES

16. Ehlers has worked for VNA as an LPN in Massachusetts from approximately June 2017 through the present.

17. Throughout her employment, VNA classified Ehlers as non-exempt and paid her on an hourly basis.

18. And, throughout her employment, VNA subjected Ehlers to its uniform meal auto-deduction policy.

19. Ehlers' written consent is attached as **Exhibit 1**.

20. Ehlers brings this class and collective action on behalf of herself and other similarly situated hourly, non-exempt VNA employees who were subject to VNA's meal auto-deduction policy.

21. VNA uniformly deducts 30 minutes a workday from these employees' recorded hours worked for so-called "meal breaks."

22. But these employees' do not receive *bona fide* 30-minute meal breaks.

23. Thus, VNA's meal auto-deduction policy deprives these employees of wages, including overtime wages, for all hours worked, including hours worked in excess of 40 in a workweek, in violation of the FLSA and MWHL.

24. The FLSA Collective of similarly situated employees is defined as:

> **All hourly, non-exempt VNA employees who were subject to VNA's meal auto-deduction policy at any time during the past 3 years (FLSA Collective Members or FLSA Collective).**

25. Ehlers also seeks to represent such a class under the MWHL pursuant to FED. R. CIV. P. 23.

26. The Massachusetts Class of similarly situated employees is defined as:

> **All hourly, non-exempt VNA employees providing in home patient services who were subject to VNA's meal auto-deduction policy while working in Massachusetts at any time during the past 3 years (Massachusetts Class Members or Massachusetts Class).**

27. The FLSA Collective Members and Massachusetts Class Members are collectively referred to as the "Patient Care Employees."

28. VNA is a Massachusetts non-profit corporation that maintains its headquarters in Worcester, Massachusetts.

29. VNA may be served with process through an officer, to a managing or general agent, or to the person in charge of the business at its principal address: **67 Millbrook St, 500N, Worcester, MA 01606.**

**COVERAGE UNDER THE FLSA**

30. At all relevant times, VNA was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31. At all relevant times, VNA was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

32. At all relevant times, VNA was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as computers, cellphones, laptops, pens, paper, etc. – that have been moved in or produced for commerce.

33. At all relevant times, VNA has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

34. At all relevant times, VNA has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as medical tools, personal protective equipment, computers, and cell phones.

35. At all relevant times, Ehlers and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce.

36. VNA uniformly deducted 30 minutes a workday from Ehlers and the FLSA Collective Members' wages for "meal breaks," even when these employees did not actually receive *bona fide*, uninterrupted meal breaks.

37. As a result of these uniform policies, VNA failed to pay Ehlers and the FLSA Collective Members for all their compensable hours worked, including overtime hours, in violation of the FLSA.

38. Thus, VNA's meal auto-deduction policy deprives Ehlers and the FLSA Collective Members of overtime compensation for all overtime hours worked during weeks in which these employees work in excess of 40 hours and violate the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

39. VNA "serve[s] the home health and hospice needs of millions of patients throughout Eastern and Central Massachusetts."[1]

40. VNA employs patient care providers, including Ehlers and the Patient Care Employees, to provide and facilitate medical care services to its clients.

41. VNA uniformly classifies these employees as non-exempt and pays them on an hourly basis.

42. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

43. For example, Ehlers has worked for VNA as an LPN in Massachusetts from approximately June 2017 through the present.

44. As an LPN, Ehlers' job duties include travelling to multiple patients homes each day, changing wound dressings, managing medications, drawing blood and dropping off samples for laboratory testing, communicating with doctor's offices regarding patient needs, educating patients on nutritional and treatment strategies and goals, and charting patients' progress.

---

[1] https://vnacare.org/about-us (last accessed June 10, 2024).

45. Throughout her employment, VNA has classified Ehlers as non-exempt from overtime and paid her on an hourly basis.

46. Specifically, VNA pays her approximately $33 an hour.

47. Ehlers is typically "scheduled" to work from 8:00 a.m. until 4:30 p.m.

48. But throughout her employment, VNA subjected Ehlers to its meal auto-deduction policy.

49. Specifically, VNA automatically deducts 30 minutes each workday from Ehlers' recorded work time for so-called "meal breaks" regardless of whether she actually received or took a *bona fide* meal break.

50. Thus, VNA did not pay Ehlers for that time.

51. But throughout her employment, Ehlers did not actually receive *bona fide* meal breaks.

52. Instead VNA's strict productivity requirements forced Ehlers to perform compensable work throughout her shifts, including during her so-called "meal breaks."

53. Ehlers and the other Patient Care Employees perform their jobs under VNA's supervision, and using the same materials, equipment, and technology approved and supplied by VNA.

54. VNA requires Ehlers and the other Patient Care Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

55. At the end of each pay period, Ehlers and the other Patient Care Employees receive wages from VNA that were determined by common systems and methods that VNA selected and controlled.

56. VNA requires Ehlers and the other Patient Care Employees, to record their "on the clock" hours worked using VNA's time tracking system.

57. Thus, just as VNA's records reflect the number of hours Ehlers worked "on the clock" each workweek, VNA also has records of the number of hours the other Patient Care Employees worked "on the clock" each workweek.

58. But, like Ehlers, VNA fails to pay its other Patient Care Employees for all their hours worked, including overtime hours.

59. VNA uniformly subjects its other Patient Care Employees to the same illegal meal auto-deduct policy it imposes on Ehlers.

60. Specifically, just as with Ehlers, VNA automatically deducts 30 minutes a workday from its other Patient Care Employees' recorded work time for so-called "meal breaks."

61. VNA automatically deducts this time regardless of whether Ehlers and the other Patient Care Employees actually receive full, uninterrupted, 30-minute meal breaks.

62. VNA simply assumes Ehlers and its other Patient Care Employees receive *bona fide* meal breaks each workday.

63. But, like Ehlers, the other Patient Care Employees do not actually receive *bona fide* meal breaks.

64. Instead, like Ehlers, VNA requires them to remain on-duty and perform compensable work throughout their shifts, including during their unpaid "meal breaks."

65. And, like Ehlers, the other Patient Care Employees are constantly subjected to work interruptions during their unpaid "meal breaks."

66. Because of these constant work interruptions, Ehlers and the other Patient Care Employees are not free to engage in personal activities during their unpaid "meal breaks."

67. In other words, Ehlers and the other Patient Care Employees are not relieved of all their patient care duties during their unpaid "meal breaks."

68. Rather, during their unpaid "meal breaks," Ehlers and the other Patient Care Employees are forced to remain on-duty and perform their regular duties and responsibilities.

69. Thus, Ehlers and the other Patient Care Employees routinely spend their unpaid "meal breaks" performing work for VNA's—not their own—predominant benefit.

70. This unpaid time is compensable under the FLSA and MWHL because VNA knew, or should have known: (1) Ehlers and its other Patient Care Employees were performing work during their "meal breaks"; (2) they were interrupted or subject to interruptions with work duties during any attempted meal period; (3) they were not completely relieved of all duties during their unpaid "meal breaks"; (4) they entirely skipped their meal periods due to work demands; (5) their unpaid meal periods were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid meal periods because of constant work interruptions; (7) they remained on VNA's premises or under VNA's supervision during their unpaid meal periods; and/or (8) they spent their unpaid meal periods performing their regular patient care duties for VNA's predominant benefit.

71. VNA fails to exercise its duty as Ehlers' and the other Patient Care Employees' employer to ensure these employees are not performing work that VNA does not want performed during their unpaid "meal breaks."

72. And VNA knows, should know, or recklessly disregards whether Ehlers and its other Patient Care Employees routinely perform work "off the clock" during their unpaid meal breaks.

73. Indeed, Ehlers and other Patient Care Employees complained to their supervisors, HR, and/or VNA management about being forced to work during their unpaid "meal breaks."

74. Thus, VNA requested, suffered, permitted, or allowed Ehlers and its other Patient Care Employees to work during their unpaid "meal breaks."

75. Despite accepting the benefits, VNA does not pay Ehlers and its other Patient Care Employees for the compensable work they perform during their automatically deducted "meal breaks."

76. When Ehlers and the other Patient Care Employees work more than 40 hours in a workweek, VNA does not pay them overtime wages for all overtime hours worked because VNA (1) fails to include time these employees work "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek and/or (2) fails to include "unapproved" hours worked in excess of 40 in their total number of hours worked in a given workweek, in willful violation of the FLSA and in violation of the MWHL.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

77. Ehlers incorporates all other paragraphs by reference.

78. Ehlers brings her claims as a class and collective action under § 216(b) of the FLSA and FED. R. CIV. P. 23.

79. The Patient Care Employees are uniformly victimized by VNA's meal auto-deduction policy, which is in willful violation of the FLSA and in violation of the MWHL.

80. Other Patient Care Employees worked with Ehlers and indicated they were paid in the same manner, performed similar work, and were subject to VNA's same illegal policy.

81. Based on her experiences with VNA, Ehlers is aware VNA's illegal practices were imposed on the Patient Care Employees.

82. The Patient Care Employees are similarly situated in all relevant respects.

83. Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purpose of determining their entitlement to overtime pay.

84. Therefore, the specific job titles or precise job locations of the various Patient Care Employees do not prevent class or collective treatment.

85. Rather, the Patient Care Employees are held together by VNA's meal auto-deduction policy, which systematically deprives them of wages, including overtime wages.

86. The back wages owed to Ehlers and the Patient Care Employees can be calculated using same formula applied to the same records.

87. Ehlers' experiences are therefore typical of the experiences of the Patient Care Employees.

88. Ehlers has no interests contrary to, or in conflict with, the Patient Care Employees that would prevent class or collective treatment.

89. Like each Patient Care Employees, Ehlers has an interest in obtaining the unpaid wages owed under federal and/or state law.

90. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

91. Absent a class and collective action, many Patient Care Employees will not obtain redress for their injuries, and VNA will reap the unjust benefits of violating the FLSA and MWHL.

92. Further, even if some of the Patient Care Employees could afford individual litigation against VNA, it would be unduly burdensome to the judicial system.

93. Indeed, the multiplicity of actions would create a hardship to the Patient Care Employees, the Court, and VNA.

94. The questions of law and fact that are common to each Patient Care Employee predominate over any questions affecting solely the individual members.

95. Among the common questions of law and fact are:

    a. Whether VNA engaged in a policy and practice of deducting 30 minutes from Ehlers' and the Patient Care Employees' recorded work time for meal periods

     that were not *bona fide*, continuous, and uninterrupted, in violation of the FLSA and MWHL;

  b. Whether VNA's meal auto-deduction policy deprived Ehlers and the Patient Care Employees of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and MWHL;

  c. Whether VNA failed to pay Ehlers and the Patient Care Employees overtime compensation for all hours worked in excess of 40 hours in a workweek in violation of the FLSA and MWHL;

  d. Whether VNA knew, or had reason to know, Ehlers and the Patient Care Employees were requested, suffered, permitted, or allowed to work overtime "off the clock" in violation of the FLSA and MWHL;

  e. Whether VNA knew, or had reason to know, Ehlers and the Patient Care Employees were requested, suffered, permitted, or allowed to work during their unpaid "meal breaks" in violation of the FLSA and MWHL;

  f. Whether VNA's decision not to pay Ehlers and the Patient Care Employees overtime wages for all overtime hours worked was made in good faith;

  g. Whether VNA's violations of the FLSA were willful.

96. Ehlers and the Patient Care Employees sustained damages arising out of VNA's illegal and uniform employment policies.

97. Ehlers knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

98. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to VNA's records, and there is no detraction from the common nucleus of liability facts.

99. Therefore, the issue of damages does not preclude class or collective treatment.

100. As part of its regular business practices, VNA intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Ehlers and the Patient Care Employees.

101. VNA's illegal policies deprived Ehlers and the Patient Care Employees of wages, including overtime wages, which they are owed under federal and/or state law.

102. There are many similarly situated FLSA Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

103. This notice should be sent to the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

104. Those similarly situated employees are known to VNA, are readily identifiable, and can be located through VNA's records.

## VNA'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

105. Ehlers incorporates all other paragraphs by reference.

106. VNA knew it was subject to the FLSA's overtime provisions.

107. VNA knew the FLSA required it to pay non-exempt employees, including Ehlers and the other Patient Care Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

108. VNA knew Ehlers and the other Patient Care Employees were non-exempt employees entitled to overtime pay.

109. VNA knew it paid Ehlers and the other Patient Care Employees on an hourly basis.

110. VNA knew Ehlers and the other Patient Care Employees worked over 40 hours in at least one workweek during the three years before this Complaint was filed because VNA required these employees to record their "on the clock" hours worked using its timeclock system.

111. Additionally, VNA knew Ehlers and the other Patient Care Employees worked over 40 hours in at least one workweek during the three years before this Complaint was filed because VNA closely monitored these employees via the medical records software they were required to utilize to perform their jobs.

112. VNA knew the FLSA required it to pay employees, including Ehlers and the other Patient Care Employees, for all hours they performed compensable work.

113. VNA knew that, as Ehlers' and the other Patient Care Employees' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that VNA did not want performed.

114. VNA knew Ehlers and the other Patient Care Employees work over 40 hours in a workweek to complete their heavy workloads in accordance with VNA's policies, procedures, and expectations.

115. VNA knew Ehlers and the other Patient Care Employees regularly worked hours in excess of 40 in a workweek "off the clock" performing their regular patient care job duties for VNA's predominant benefit.

116. VNA knew it failed to provide Ehlers and the other Patient Care Employees with *bona fide*, uninterrupted meal breaks.

117. VNA knew Ehlers and the other Patient Care Employees did not actually receive *bona fide*, uninterrupted meal breaks.

118. VNA knew Ehlers and the other Patient Care Employees regularly worked during their unpaid "meal breaks."

119. VNA knew Ehlers and the other Patient Care Employees regularly spent their unpaid "meal breaks" performing their regular patient care job duties for VNA's predominant benefit.

120. Indeed, Ehlers and the other Patient Care Employees complained to VNA's management, HR, and/or their supervisors about being forced to work during their unpaid "meal breaks."

121. Thus, VNA knew it requested, suffered, permitted, or allowed Ehlers and the other Patient Care Employees to work during their unpaid "meal breaks."

122. In other words, VNA knew, should have known, or recklessly disregarded whether Ehlers and the other Patient Care Employees performed compensable work when working in excess of 40 hours in a workweek and during their unpaid "meal breaks."

123. VNA automatically deducts 30 minutes a day from Ehlers' and the other Patient Care Employees' recorded work time for "meal breaks,"

124. VNA automatically deducts 30 minutes a day from Ehlers' and the other Patient Care Employees' recorded work time for "meal breaks" during weeks these employees work in excess of 40 hours.

125. In other words, VNA knew, should have known, or recklessly disregarded whether it did not pay Ehlers and the other Patient Care Employees for all the hours they performed compensable work.

126. VNA's decision to not pay Ehlers and the other Patient Care Employees for "unapproved" hours worked in excess of 40 in a workweek was neither reasonable, nor was it made in good faith.

127. VNA's decision to automatically deduct 30 minutes a day from Ehler's and the other Patient Care Employees' recorded work time for "meal breaks" was neither reasonable, nor was it made in good faith.

128. VNA's failure to pay Ehlers and the other Patient Care Employees overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith based upon advice of counsel.

129. VNA knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Ehlers and the other Patient Care Employees of overtime wages for all hours worked in excess of 40 in a workweek in violation of the FLSA.

130. VNA knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

131. Ehlers realleges and incorporates all other paragraphs by reference.

132. Ehlers brings her FLSA claim as a collective action under 29 U.S.C. § 216(b).

133. VNA violated, and is violating, the FLSA by failing to pay Ehlers and the FLSA Collective Members overtime compensation for all hours worked in excess of 40 in a workweek, including any "unapproved" overtime hours worked and/or hours worked during these employees' unpaid meal periods.

134. Ehlers and the FLSA Collective Members have been harmed as a direct and proximate result of VNA's unlawful conduct because they have been deprived of wages owed, including overtime wages, for work that they performed and from which VNA derived a direct and substantial benefit.

135. VNA's failure to pay Ehlers and the FLSA Collective Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to timely pay these employees overtime compensation for all overtime hours worked made in good faith.

136. Accordingly, Ehlers and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE MWHL
### (MASSACHUSETTS CLASS)

137. Ehlers incorporates all other paragraphs by reference.

138. Ehlers brings his MWHL claims as a class action on behalf of herself and the other Massachusetts Class Members pursuant to FED. R. CIV. P 23.

139. At all relevant times, VNA was a covered "employer" within the meaning of the MWHL. *See* M.G.L. 151 § 2.

140. At all relevant times, VNA employed Ehlers and the other Massachusetts Class Members as covered "employees" within the meaning of the MWHL. *See* M.G.L. 151 § 2.

141. The MWHL requires employers, like VNA, to pay non-exempt employees, including Ehlers and the other Massachusetts Class Members, overtime wages at rates not less than 1.5 the employee's regular rate of pay for all hours worked after 40 in a workweek. *See* M.G.L. 151 § 1A.

142. Ehlers and the other Massachusetts Class Members are entitled to overtime pay under the MWHL.

143. VNA violated, and is violating, the MWHL by employing non-exempt employees (Ehlers and the other Massachusetts Class Members) for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek. *See* M.G.L. 151 § 1A.

144. VNA's unlawful conduct harmed Ehlers and the other Massachusetts Class Members by depriving them of the overtime wages they are owed.

145. Accordingly, Ehlers and the Massachusetts Class Members are entitled to recover their unpaid overtime wages under the MWHL in an amount equal to 1.5 times their regular rates of pay, plus treble damages, as well as attorney's fees and costs. *See* M.G.L. 151 § 1B.

## JURY DEMAND

146. Ehlers demands a trial by jury on all Counts.

## RELIEF SOUGHT

Ehlers, individually and on behalf of the other Patient Care Employees, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

    b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

    c.    An Order appointing Ehlers and his counsel to represent the interests of the Patient Care Employees;

    d.    An Order pursuant to Section 16(b) of the FLSA finding VNA liable for unpaid overtime wages due to Ehlers and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

    e.    An Order pursuant to the MWHL finding VNA liable for unpaid overtime wages due to Ehlers and the Massachusetts Class Members, plus treble damages in an amount equal to two times their unpaid wages;

    f.    A Judgment against VNA awarding Ehlers and the Patient Care Employees all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties available under the FLSA and MWHL;

      g.      An Order awarding attorney's fees, costs, and expenses;

      h.      Pre- and post-judgment interest at the highest applicable rates; and

      i.      Such other and further relief as may be necessary and appropriate.

| | |
|---|---|
| Dated: July 2, 2024. | Respectfully submitted, |
| | **GORDON LAW GROUP LLP** |
| | By: _/s/ Philip J. Gordon_ |
| | Philip J. Gordon |
| | Mass. BBO# 630989 |
| | Kristen M. Hurley |
| | Mass. BBO# 658237 |
| | 585 Boylston Street |
| | Boston, Massachusetts 02116 |
| | Phone: (617) 536-1800 |
| | Fax:    (617) 536-1802 |
| | pgordon@gordonllp.com |
| | khurley@gordonllp.com |
| | |
| | Michael A. Josephson* |
| | TX Bar No. 24014780 |
| | Andrew W. Dunlap* |
| | TX Bar No. 24078444 |
| | **JOSEPHSON DUNLAP LLP** |
| | 11 Greenway Plaza, Suite 3050 |
| | Houston, Texas 77046 |
| | Phone:        (713) 352-1100 |
| | Fax:          (713) 352-3300 |
| | mjosephson@mybackwages.com |
| | adunlap@mybackwages.com |
| | |
| | Richard J. (Rex) Burch* |
| | TX Bar No. 24001807 |
| | **BRUCKNER BURCH PLLC** |
| | 11 Greenway Plaza, Suite 3025 |
| | Houston, Texas 77046 |
| | Phone:        (713) 877-8788 |
| | Fax:          (713) 877-8065 |
| | rburch@brucknerburch.com |
| | |
| | *Pro hac vice applications forthcoming* |
| | |
| | **ATTORNEYS FOR EHLERS AND THE PATIENT CARE EMPLOYEES** |